# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DWAYNE SKIBBE and DEBORAH SKIBBE, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. BANK TRUST, N.A., As Trustee for LSF9 MASTER PARTICIPATION TRUST, and LAW OFFICES OF IRA T. NEVEL, <br><br> Defendants. | Case No. 16 C 192 <br><br> Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

For the reasons stated herein, the Court grants Dwayne and Deborah Skibbe's Motion to Dismiss U.S. Bank Trust's Counterclaims [ECF No. 50].

## I. BACKGROUND

The events in this lawsuit are largely undisputed. In 2004, Dwayne and Deborah Skibbe (collectively, the "Skibbes") obtained a mortgage from Household Finance Corporation. The mortgage was secured by the Skibbes' residence. In April 2010, the Skibbes stopped paying their mortgage and have not made another payment since. In December of that year, Household Finance, through its agent Ira T. Nevel ("Nevel"), a co-Defendant in this case, filed a foreclosure action again the Skibbes in Kane County. In this first of three foreclosure

lawsuits, Household Finance alleged that the Skibbes defaulted in April 2010 and owed Household Finance some $259,657.30.

In 2011, the Skibbes filed for Chapter 13 bankruptcy. As part of the bankruptcy, they submitted a statement of intention in which they declared that they would surrender the subject property in satisfaction of the outstanding debt. Even though such a statement would not alleviate the need for the creditor to foreclose on the property, *see, Vlasic v. Equifax Credit Info. Servs.,* No. 03 C 4044, 2004 U.S. Dist. LEXIS 8361, at *6 (N.D. Ill. May 10, 2004) ("Defendants correctly point out that Vlasic's intention to surrender the property did not transfer title in the property."); ECF No. 72 (U.S. Bank Trust's Reply Br.) at 14 (agreeing that "legal transfer of title requires a judicial foreclosure"), Household Finance, for whatever reason, voluntarily dismissed its foreclosure lawsuit against the Skibbes about a year later.

The mortgagee then evidently had a change of heart, as it filed another foreclosure lawsuit in June of 2013. This complaint alleged a default date of August 10, 2010, with an unpaid balance of roughly $1,000 less than what was alleged in the first lawsuit, or $258,542.72. Despite this later-pled default date, the record shows that the Skibbes had not made a payment since April 2010. *See,* ECF No. 46 (Countercl.) at 19

¶ 7; ECF No. 72, Ex. B, at 10:7-12:18; *United States Bank Tr., N.A. v. Skibbe*, 2016 IL App (2d) 151143-U, ¶¶ 8-9.

In October 2013, the Skibbes converted their Chapter 13 bankruptcy to Chapter 7. The effect of this conversion on the present matter is unclear. The parties, however, do not dispute that the Skibbes did not amend their statement of intention to surrender the subject property at any point during their Chapter 7 bankruptcy. Sometime after the conversion, Household Finance voluntarily dismissed its second foreclosure complaint.

In January 2014, the Skibbes received their bankruptcy discharge. The case closed some two months later, seemingly without any objections from Household Finance despite the fact that the Skibbes did not surrender the property and Household Finance had not successfully foreclosed on it. Indeed, the Skibbes never gave up possession of their house, and later that same year, Household Finance transferred their mortgage loan to U.S. Bank Trust. U.S. Bank Trust then took the action that led to the Skibbes bringing this lawsuit: it had Nevel file a third foreclosure action against the couple.

U.S. Bank Trust's lawsuit fared worse than the first two foreclosure actions. The state circuit court dismissed the suit with prejudice for violating Illinois's no-second-refiling rule. This rule came about as a result of the Illinois Supreme Court

interpreting 735 ILCS 5/13-217 as allowing a case to be refiled just once. *See, Timberlake v. Illini Hosp.,* 175 Ill.2d 159, 162-63 (1997) ("[735 ILCS 5/13-217] was not intended to permit multiple refilings of the same action. This court has interpreted section 13-217 as permitting only one refiling even in a case where the applicable statute of limitations has not yet expired."). In reaching its decision to dismiss the case, the circuit court deemed the 2010 action to be the originally filed action, the 2013 action to be the first refiling, and the 2015 action to be the second – and thus barred – refiling. The court further denied U.S. Bank's motion for reconsideration, giving no weight to the argument that the Skibbes were unfairly getting a "free house" as a result of the court turning away the foreclosure suit. *See,* ECF No. 72, Ex. B (Ruling on Mot. Reconsider), at 13:18-14:21.

The Illinois appellate court affirmed the dismissal. *Skibbe,* 2016 IL App (2d) 151143-U, ¶ 11. It explained that 735 ILCS 5/13-217 "applies to all claims raised in the original action as well as all claims that grew out of the same transaction involved in the original action." *Id.* ¶ 6. The court rejected the argument that the 2015 foreclosure action was not a second refiling of the original 2010 action because the 2015 action, like the 2013 complaint but unlike the 2010

complaint, alleged a default date of August 2010 and not April 2010. As the appellate court stated, "in contrast to what plaintiff alleges on appeal, the 2010, 2013, and 2015 complaints all involve the same transaction, *i.e.,* defendants' failure to make any payments on their mortgage since April 2010." *Id.* ¶ 8.

Having won, the Skibbes went on the offensive. They filed this federal lawsuit alleging that U.S. Bank Trust and Nevel violated the Fair Debt Collection Practices Act ("FDCPA") and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") in instituting the third foreclosure action. U.S. Bank Trust hit back with four counterclaims, including promissory estoppel, set-off, constructive trust, and equitable lien. The nub of the counterclaims is that the Skibbes should be compelled to pay the Bank, in one way or another, for their "free house." U.S. Bank Trust proposed as remedies an award of damages, a surrender of the property, an imposition of a constructive trust, or a creation of an equitable lien.

The Skibbes now bring this Motion to Dismiss the Counterclaims on both Rule 12(b)(1) and 12(b)(6) grounds. For the reasons discussed below, the Court finds dismissal appropriate because of *res judicata*. It therefore does not reach the Skibbes' Rule 12(b)(6) arguments regarding the adequacy of U.S. Bank Trust's pleadings.

## II. ANALYSIS

Although the Court ultimately concludes that U.S. Bank Trust's counterclaims are barred by *res judicata*, it first addresses its jurisdiction to decide the issue. *See, Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94-95 (1998) ("Without jurisdiction the court cannot proceed at all in any cause.") (internal quotation marks omitted).

### A. Jurisdiction

The Skibbes contest jurisdiction on two grounds: the lack of supplemental jurisdiction under 28 U.S.C. § 1367 to reach U.S. Bank Trust's counterclaims and *Rooker-Feldman*. The Court takes each argument in turn below.

#### *1. Supplemental Jurisdiction*

U.S. Bank Trust concedes that all its counterclaims are predicated on state law. As such, the claims may be heard in a federal forum only if they are "so related" to the Skibbes' federal FDCPA claim so as to "form part of the same case or controversy." *See,* 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). This requirement is satisfied so long as there is a "loose factual

connection" between the FDCPA claim and the counterclaims. *See, Channell v. Citicorp Nat'l Servs.*, 89 F.3d 379, 385 (7th Cir. 1996) (stating that "§ 1367 has extended the scope of supplemental jurisdiction . . . to the limits of Article III – which means that a loose factual connection between the claims can be enough") (internal quotation and alteration marks omitted).

U.S. Bank Trust contends that its counterclaims meet this standard as "they are inextricably intertwined with the Skibbes' claim." ECF No. 72 at 2. In particular, U.S. Bank Trust argues that the claims are intertwined because the Skibbes' FDCPA complaint rests on the contention that the 2015 foreclosure lawsuit was filed when "foreclosure could not legally occur," while U.S. Bank Trust's counterclaims are bottomed on the fact that "U.S. Bank Trust absolutely had a right to foreclose." ECF No. 1 (Compl.), ¶ 27; ECF No. 72 at 3.

The Court agrees that there is a "loose factual connection" between the Skibbes' Complaint and U.S. Bank Trust's counterclaims. In essence, the Skibbes are suing because U.S. Bank Trust unfairly attempted to collect the mortgage loan debt, and U.S. Bank Trust is counter-suing to attempt (again) to collect that same debt. The secured mortgage debt is thus the

linchpin tying together the Skibbes' and U.S. Bank Trust's claims.

The Skibbes nonetheless protest that supplemental jurisdiction does not exist because their consumer action does not arise from the mortgage loan. That is, they say that they are able to sue U.S. Bank Trust for unfairly trying to collect on the loan regardless of whether the loan actually exists. That this may be true does not change the fact that to state their claims, both the Skibbes and U.S. Bank Trust need to plead the details of the underlying mortgage loan, the subject property, the bankruptcy, and the foreclosure actions. Indeed, both parties pleaded those facts. The Court is thus persuaded that there exists "a common nucleus of operative facts" between the claims and counterclaims that permits the exercise of supplemental jurisdiction. *Houskins v. Sheahan,* 549 F.3d 480, 495 (7th Cir. 2008) ("A district court has supplemental jurisdiction over the state claims . . . pursuant to § 1367(a) so long as they derive from a common nucleus of operative fact with the original federal claims.") (internal quotation marks omitted).

Furthermore, the Seventh Circuit seems to have rejected the argument that the Skibbes here bring. In *Channell,* the Seventh Circuit dealt with a case where a class of plaintiffs sued the

defendant Citicorp for not properly disclosing in their lease agreement the method for calculating an early termination fee. *See, Channell,* 89 F.3d at 380-81. Citicorp counterclaimed when it discovered that it had charged the plaintiffs less than what the method allowed for when the plaintiffs terminated their leases early. *Id.* at 384. The Seventh Circuit found that Citicorp's "counterclaim falls within the outer boundary of § 1367(a)." *Id.* at 385-86. This is despite the fact that "[t]he acts creating the [parties'] claims differ" as "the claims against Citicorp stem from the signing of the lease, while the claims against the class stem from the early termination of the lease." *Id.* at 385. Here, the Skibbes say that the act giving rise to their FDCPA claim is the collection of the debt. In contrast, the act creating U.S. Bank Trust's right to collect is the signing of the mortgage instrument. But *Channell* teaches that this is not dispositive.

What are dispositive are the shared facts or "constants" across the claims. The *Channell* court found that jurisdiction was proper because the plaintiffs' claim and Citicorp's counterclaim had as "constants" the following: "the parties, the lease, the clause [in the lease governing the early termination charge], and the terminations." *Id.* at 385-86. In this case, the parties, the mortgage instruments, and the

- 9 -

nonpayment likewise are "constants" across the claims and counterclaims. As in *Channell* then, U.S. Bank Trust's counterclaims fall within the boundary of the jurisdiction granted to the Court by 28 U.S.C. § 1367(a).

Besides *Channel,* the parties seem to agree that *Mufwene* and *Crawford* are the most relevant authorities for deciding the current Motion. The relevance of the two cases is clear. Both addressed supplemental jurisdiction issues when the federal claim was a FDCPA claim. Although the parties cited *Mufwene* and *Crawford* as cases standing in contradiction to each other, the courts in both of those cases actually found that they had supplemental jurisdiction. *See, In Mufwene v. Am. Credit Exch.,* No. 10 C 2591, 2010 U.S. Dist. LEXIS 117026, at *3-6 (N.D. Ill. Nov. 3, 2010) ("Here, the court finds that American Credit's breach of contract counterclaim is sufficiently related to Mufwene's FDCPA claim to support this court's exercise of supplemental jurisdiction under § 1367(a)."); *Crawford v. Equifax Payment Servs.,* No. 97 C 4240, 1998 U.S. Dist. LEXIS 15719, at *11-18 (N.D. Ill. Sep. 30, 1998) ("Applying the liberal interpretation of § 1367(a) recognized in *Channell,* we agree with the Magistrate Judge that we may exercise supplemental jurisdiction here."). It is true that the *Crawford* court ultimately declined to exercise its supplemental

jurisdiction. *See, Crawford,* 1998 U.S. Dist. LEXIS 15719 at *18-20. However, this was done as a matter of discretion permitted the court under 28 U.S.C. § 1367(c), and not because the court lacked the authority to hear the case under 28 U.S.C. § 1367(a).

Like the courts in *Channell, Mufwene,* and *Crawford* then, the Court believes its jurisdiction reaches U.S. Bank Trust's counterclaims. As such, the Court may hear the claims unless another jurisdictional bar stands in its way. Whether *Rooker-Feldman* may be such a bar is an issue to which the Court turns next.

### *2. Rooker-Feldman*

"Because the *Rooker-Feldman* doctrine is jurisdictional in nature, its applicability ends the litigation in federal court and the court has no authority to address affirmative defenses, including *res judicata*." *Ctrs., Inc. v. Town of Brookfield,* 148 F.3d 699, 703 (7th Cir. 1998). Thus, before the Court may go any further and reach *res judicata* grounds, it considers whether *Rooker-Feldman* applies in this case.

*Rooker-Feldman* refers to the principle that a lower federal court may not review a state court's judgment. *See, Rooker v. Fid. Tr. Co.,* 263 U.S. 413, 415-16 (1923) ("Under the legislation of Congress, no court of the United States other

than this [Supreme] Court could entertain a proceeding to reverse or modify the judgment [of the state court]."); *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983) ("[L]ower federal courts possess no power whatever to sit in direct review of state court decisions.") (internal quotation marks omitted). As the Seventh Circuit has explained, "to determine the applicability of the *Rooker-Feldman* doctrine, the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself." *Garry v. Geils,* 82 F.3d 1362, 1365 (7th Cir. 1996). Only if the alleged injury resulted from the state court judgment, or is inextricably intertwined with it, does *Rooker-Feldman* find a foothold. *Id.* If instead the party "maintains an injury apart from the loss in state court," then *Rooker-Feldman* does not apply, but – as is important for our purpose later – *res judicata* may. *Id.*

In this case, U.S. Bank Trust's injury is separate from the state court's judgment dismissing its foreclosure case. The injury stems from the Skibbes' failure to repay the Bank for its loan – either by making their mortgage payment or by surrendering the property securing the mortgage. Thus, U.S. Bank Trust arrived at the circuit court already injured; the court may have failed to remedy the Bank's injury but its

judgment was not the cause of the harm itself. In other words, U.S. Bank Trust "suffer[ed] an injury out of court and then fail[ed] to get relief from state court." *GASH Assocs. v. Rosemont,* 995 F.2d 726, 729 (7th Cir. 1993). In such a case, *Rooker-Feldman* finds no applicability. *See, id.; Garry,* 82 F.3d at 1365-66.

**B. *Res Judicata***

While the Skibbes have not found purchase with their jurisdictional arguments, they are on firmer footing in arguing that *res judicata* bars U.S. Bank Trust's counterclaims. "In general, the doctrine of claim preclusion or *res judicata* bars a party from asserting a claim that has already been resolved in another lawsuit between the same parties or those in privity with them, and the doctrine reaches both claims that were actually asserted in an earlier lawsuit and those that could have been asserted but were not." *Russian Media Grp., LLC v. Cable Am., Inc.,* 598 F.3d 302, 310 (7th Cir. 2010). Here, U.S. Bank Trust sued the Skibbes in state court, lost, and is now suing the couple again in federal court. The question then is whether the prior action precludes the Bank from doing so.

To answer this question, the Court consults Illinois law since an Illinois court decided the prior lawsuit. *See, Arlin-Golf, LLC v. Vill. of Arlington Heights,* 631 F.3d 818, 821 (7th

Cir. 2011) ("To determine whether *res judicata* applies, we apply the preclusion law of Illinois, the state that rendered the judgment."). In Illinois, "[f]or the doctrine of *res judicata* to apply, the following three requirements must be satisfied: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *Nowak v. St. Rita High Sch.,* 197 Ill.2d 381, 390 (2001).

U.S. Bank Trust does not dispute that there was a final judgment in the foreclosure case and that the same parties are involved in both actions. This leaves only the issue of whether there is an identity of cause of action between the state court foreclosure claim and the current counterclaims. Illinois applies the transactional test to decide such questions. Under this test, "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park v. City of Highland Park,* 184 Ill.2d 290, 311 (1998). The test is "pragmatic" as it focuses on the facts underlying the different claims while disregarding "the number of substantive theories, the variant forms of relief flowing from those theories, and the variations

in evidence needed to support the theories." *Garcia v. Vill. of Mt. Prospect,* 360 F.3d 630, 637 (7th Cir. 2004); *accord, River Park,* 184 Ill.2d at 309.

U.S. Bank Trust argues that its counterclaims are not precluded since it makes different allegations in the two lawsuits. According to U.S. Bank Trust, its "foreclosure actions alleged the Skibbes failed to make monthly mortgage payments since April 2010 under the Mortgage and Note," whereas the current lawsuit "allege[d] the Skibbes failed to surrender the property as required by their Bankruptcy Discharge." ECF No. 72 at 8-9. U.S. Bank Trust thus seems to draw a line between the bankruptcy surrender and the foreclosure, treating the two as belonging to different groups of operative facts.

The Court finds that demarcation untenable. Whatever is the legal labels and sought-for forms of relief, the factual predicates underlying the surrender and the foreclosure are the same. In pursuing the surrender and foreclosure, U.S. Bank Trust seeks the same object: the Skibbes' residence or its money equivalent. U.S. Bank Trust's right to insist on that relief stems from the same obligation: the mortgage debt. The debt was created by a single extension of credit: the 2004 mortgage loan. The nonpayment of the debt gives U.S. Bank Trust, as successor in interest to the lender, the right it

seeks to vindicate – that to seize the property securing the mortgage. *See, Perry v. Globe Auto Recycling, Inc.,* 227 F.3d 950, 953 (7th Cir. 2000) ("[T]he assignee stands in the shoes of the assignor and assumes the same rights, title and interest possessed by the assignor.") (internal quotation marks omitted). It is because of this common "group of operating facts" that U.S. Bank Trust attached to its counterclaims the same written instruments – the mortgage contract, security agreement, and assignment of interest from Household Finance to U.S. Bank Trust – that it attached to the 2015 foreclosure action. *Compare,* ECF No. 45, Ex. A, B, & C *with U.S. Bank Trust v. Skibbe,* No. 15 CH 22, Complaint to Foreclose Mortgage, Ex. A, B, & D (Jan. 8, 2015).

The bankruptcy is relevant insofar as it discharged the Skibbes from personal liability on the debt. *See,* 11 U.S.C. § 524(a); *Johnson v. Home State Bank,* 501 U.S. 78, 82-83 (1991). The proceeding did not otherwise transmogrify the underlying obligation. The right to seize the property to satisfy the debt predates the Skibbes' bankruptcy, and it survives it. *See,* 11 U.S.C. § 522(c)(2); *Johnson,* 501 U.S. at 82-83 ("[T]he Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy."). Whatever the Skibbes owed to U.S. Bank Trust, they owed because of the

original mortgage loan, secured by the same property before and after bankruptcy. In sum, there is one unpaid debt, stemming from one loan, secured by one collateral – ergo, one group of operative facts.

The arguments that U.S. Bank Trust makes elsewhere in its brief further persuade the Court that the Bank's counterclaims arise from the same factual predicates as the foreclosure. For one, the Bank repeatedly presses for the Court to adopt the Eleventh Circuit's holding from *In re Failla,* 838 F.3d 1170 (11th Cir. 2016). The court there held that a debtor who chooses to surrender a property in bankruptcy "must drop his opposition to the creditor's subsequent foreclosure action." *Id.* at 1178. The holding from *In re Failla* is not uniformly followed, and the Seventh Circuit has not opined on the matter. *See, e.g., In re Elkouby,* 561 B.R. 551, 557 (Bankr. S.D. Fla. 2016) ("[I]t is apodictic that a lienholder cannot, in any court, assert that a debtor's indicated intent to surrender real property in a chapter 7 case has any consequence with respect to the lienholder post-bankruptcy, including precluding that debtor from defending an action by a lienholder to foreclose its security interest in real property."); *In re Ryan,* 560 B.R. 339, 348-50 (Bankr. D. Haw. 2016) (similarly declining to follow *In re Failla*); ECF No. 72 at 8 (acknowledging that there is a "lack

of contrary 7th Circuit authority"). Nonetheless, U.S. Bank Trust devotes significant space to the case.

The importance of *In re Failla* to U.S. Bank Trust's *foreclosure* efforts is obvious. If the Skibbes "must drop [their] opposition to the creditor's subsequent foreclosure action," then they should not fight any foreclosure action that the Bank brings, regardless of whether that action complies with the one-refiling rule. But U.S. Bank Trust is urging the case on this Court in defending its counterclaims. This makes its assertion that the claims are unrelated to the foreclosure less than convincing.

For another, U.S. Bank Trust appears to advance an incredibly narrow view of the scope of *res judicata*. The Bank asserts that, while it has not "filed a foreclosure counterclaim," it may do so in this case. ECF No. 72, at 5 n.5. This is because despite what the Illinois courts said in dismissing its 2015 foreclosure action, "each missed payment on an obligation payable in installments is a separate cause of action." *Id*. As such, the only action barred is that alleging an April 2010 default date. *See, id.* Any other cause of action, U.S. Bank Trust may viably advance, either as a counterclaim in this federal lawsuit or as a foreclosure action in the state court. *See, id.*

The Court cannot agree. As a preliminary matter, it notes that if U.S. Bank Trust is correct, then the Bank has avenues for relief in the state court. According to U.S. Bank Trust's reading of the law, all the Bank has to do to keep the Skibbes from getting a "free house" is institute another foreclosure action. The denial of a federal forum is thus neither a windfall to the Skibbes nor inequitable to the Bank.

More to the point, U.S. Bank Trust's narrow conception of *res judicata* cannot be correct. Under that conception, U.S. Bank Trust's claims would never be barred by any prior adjudication as long as the Bank can vary its complaints ever-so-slightly by changing a default date. Regardless of whether reality has changed at all – whether the Skibbes have made another payment, received another loan, or otherwise modified their obligation to the Bank – U.S. Bank Trust would be in total control as to how often they can go after the same couple, for the same loan, seeking the same collateral.

But Illinois has adopted a "pragmatic" approach to *res judicata* to avoid such maneuvers. If the facts are the same, then U.S. Bank cannot get a do-over simply by hiring better lawyers to draft better complaints (or more lawyers to draft yet more complaints). *See, People ex rel. Burris v. Progressive Land Developers, Inc.,* 151 Ill.2d 285, 294 (1992) ("The doctrine

[of *res judicata*] extends not only to what actually was decided in the original action but also to matters which could have been decided in that suit.").

Ultimately, there is unresolvable tension between U.S. Bank Trust's argument for supplemental jurisdiction and its argument to avoid *res judicata*. In fighting for jurisdiction, U.S. Bank Trust asserts that its counterclaims and the Skibbes' FDCPA claim are "inextricably intertwined" because both had to do with the Bank's right to foreclose. In trying to shrug off *res judicata*, U.S. Bank Trust attempts an about-face and says that its counterclaims have nothing to do with the foreclosure but everything to do with the bankruptcy surrender. Given such a fine needle to thread, it should come as no surprise that the Bank is not entirely successful. The Court has jurisdiction over the case, but it exercises that jurisdiction to find that U.S. Bank Trust's counterclaims are precluded.

### III. CONCLUSION

For the reasons stated herein, the Skibbes' Motion to Dismiss [ECF No. 50] is granted.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 6/9/2017