IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DWAYNE SKIBBE and DEBORAH
SKIBBE,

               Plaintiffs,

       v.

U.S. BANK TRUST, N.A.,
As Trustee for LSF9 MASTER
PARTICIPATION TRUST; and
LAW OFFICES OF IRA T. NEVEL,

               Defendants.

Case No. 16 C 192

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

This case involves an improperly-filed foreclosure in
Illinois state court and the homeowners' claim that this
improper foreclosure constitutes a violation of the Fair Debt
Collection Practice Act, *see,* 15 U.S.C. § 1692 *et seq.* (the
"FDCPA"), and the Illinois Consumer Fraud and Deceptive Business
Practices Act, 810 ILCS 505/1 *et seq.* (the "ICPA"). Before the
Court are Cross-Motions for Summary Judgment [ECF Nos. 126, 131,
142]. For the reasons stated herein, the Court grants U.S. Bank
and Nevel's Motions for Summary Judgment [ECF Nos. 126, 131] and
denies the Skibbes' Motion for Partial Summary Judgment [ECF
No. 142].

## I. FACTUAL BACKGROUND

Most of the facts are undisputed between the parties. The parties before the Court are the foreclosed-upon homeowners (the "Skibbes"), the bank ("U.S. Bank"), and the bank's law firm that filed the foreclosure actions ("Nevel"). There have been four foreclosures in this case. Each will be described here, although only the latter three are relevant.

### A. The Mortgage Loan

In October 2004, Dwayne and Deborah Skibbe (the "Skibbes") refinanced their home mortgage loan with Household Finance Corporation ("HFC") in the amount of $271,132.11 and secured the loan with their home. (U.S. Bank and Nevel's Resps. to Skibbes' Facts ¶ 18 (U.S. Bank and Nevel filed separate responses to the Skibbes' Statement of Facts, but where no difference is apparent, the responses will be cited together).) Eventually, the Skibbes stopped making regular payments on their mortgage. (Skibbes' Resp. to U.S. Bank ¶ 9.) A foreclosure action was filed in 2007 and later voluntarily dismissed. (*Id.* ¶ 10; *HFC v. Deborah Skibbe et al.,* No. 07 CH 1562 (Ill. Cir. Ct.).) This initial foreclosure is not relevant to the issues here.

### B. Foreclosure I

The Skibbes defaulted on their monthly mortgage payments again in 2010. (U.S. Bank and Nevel's Resps. to Skibbes' Facts

¶ 20.) In December 2010, HFC filed a foreclosure suit against the Skibbes in Kane County seeking a judgment of foreclosure and sale of the Skibbes' home ("Foreclosure I"). (*Id.* ¶ 21; *HFC v. Skibbe,* 10 CH 5758 (Ill. Cir. Ct.)). The Skibbes filed for bankruptcy on December 23, 2011. (Skibbes' Resp. to U.S. Bank ¶ 19.) During the bankruptcy proceedings, the Skibbes filed a statement of intention to surrender the property. (*Id.* ¶ 20.) Plaintiffs' Chapter 13 Plan was confirmed on May 21, 2012, and HFC afterwards voluntarily dismissed Foreclosure I. (*Id.* ¶¶ 21-22.)

### C. Foreclosure II

A little over a year later, in June 2013, Nevel, on behalf of HFC, filed a second foreclosure against the Skibbes in Kane County seeking foreclosure and sale of Skibbes' home ("Foreclosure II"). (*See,* U.S. Bank and Nevel's Resps. to Skibbes' Facts ¶ 23; *HFC v. Skibbe,* 13 CH 1418 (Ill. Cir. Ct.)). Unfortunately for the Defendants, HFC voluntarily dismissed Foreclosure II five months later. (*Id.* ¶ 24.) It seems a mystery even to the parties why Foreclosure II was voluntarily dismissed. (Skibbes' Resp. to U.S. Bank ¶ 26.) The Skibbes converted their bankruptcy to Chapter 7 and subsequently received a bankruptcy discharge on January 6, 2014. (*Id.* ¶¶ 27-28.) The mortgage loan was later assigned from HFC to U.S. Bank

Trust N.A. ("U.S. Bank") after having already been in default. (Skibbes' Resp. to U.S. Bank's Add'l Facts ¶ 2; U.S. Bank's Resp. to Skibbes' Facts ¶ 25.) U.S. Bank retained Defendant Law Offices of Ira T. Nevel ("Nevel") to collect the debt through foreclosure on the property. (Nevel's Resp. to Skibbes' Facts ¶¶ 14-15.)

### D. Foreclosure III

In its ill-fated third attempt, Nevel, on behalf of U.S. Bank, filed a third foreclosure against the Skibbes in Kane County on January 8, 2015, seeking foreclosure and sale of the Skibbes' home to satisfy their mortgage obligation ("Foreclosure III"). (*See,* U.S. Bank and Nevel's Resps. to Skibbes' Facts ¶ 30; *U.S. Bank v. Skibbe,* 15 CH 22 (Ill. Cir. Ct.)). Foreclosure III is at the heart of the Skibbes' FDCPA claim.

The propriety of Foreclosure III was (and still is) heavily disputed between the parties. The crux of the dispute was whether Foreclosure III was procedurally barred under Illinois law. The Skibbes argued (successfully) that Foreclosure III was barred by Illinois' single refiling rule, which allows a litigant to dismiss voluntarily a lawsuit and then refile that same lawsuit only once. The Skibbes argue that Foreclosure III was a *second* refiling and thus barred by the Illinois Code of Civil Procedure. *See,* 735 ILCS 5/13-217; *Timberlake v. Illini*

- 4 -

*Hosp.*, 676 N.E.2d 634, 635 (Ill. 1997). The Defendants argued that Foreclosure I and Foreclosures II and III were different cases because Foreclosure I was based on an April 2010 default date whereas Foreclosures II and III were based on an August 2010 default date. (Skibbes' Resp. to Nevel ¶¶ 8, 16, 22.) Thus, according to the Defendants, Foreclosure III was proper under the single refiling rule because it was just the *first* refiling of Foreclosure II, not the second refiling of Foreclosure I. Now in federal court, the Defendants buttress their position by pointing to the fact that the foreclosure complaints allege different default dates because the Skibbes made additional payments in 2011, after Foreclosure I was filed. (U.S. Bank's Facts ¶ 16; Nevel's Facts ¶ 11.) The Defendants rely on the Skibbes' bank statements to support its assertion. *Id.* The Skibbes do not dispute that these payments were made to HFC from their bank account, but they dispute characterizing them as mortgage payments, notably without any indication about what else those payments could possibly be. (Skibbes' Resp. to U.S. Bank's Facts ¶ 16.)

The parties continued to argue about whether Foreclosure III was proper, both in letter correspondence prior to Foreclosure III's filing and then throughout the state court

litigation, including on appeal.  (Skibbes' Resp. to U.S. Bank
¶¶ 29-32.)

### E.  Prior State Court Litigation

The Skibbes won that argument in state court.  On June 24,
2015, the circuit court dismissed Foreclosure III with
prejudice, holding it was barred by the single-refiling rule.
(U.S. Bank and Nevel's Resps. to Skibbes' Facts ¶ 34.)  Nevel
moved to reconsider.  The court denied the motion, at least
partially based on the court's understanding that no payments
had been made after April 2010.  (*Id.* ¶ 38; Skibbes' Resp. to
U.S. Bank ¶¶ 42-43.)  The court found that "both sides agreed
and reaffirmed this morning that no payments were made after
April 2010" and denied reconsideration, stating in its ruling
that "[b]ased on the representations that were made on the date
of our first hearing and today that no additional payments were
made . . . what's been presented is that nothing has changed in
terms of the payments since [Foreclosure I]" and "[t]he fact of
the matter is . . . the Plaintiff alleged the same breach in
[Foreclosure I], [Foreclosure II], and [Foreclosure III]."
(Transcript of Mot. to Recon. Hearing 8:4-6, 17:17-19:14, Ex. F
to U.S. Bank ¶ 45; Skibbes' Resp. to U.S. Bank ¶ 45.)  The
Defendants now state that additional payments were, in fact,
made by the Skibbes in 2011, and that counsel for both parties

incorrectly stated otherwise at the hearing. (Skibbes' Resp. to U.S. Bank ¶ 46.) Neither party disputes that the state court denied the motion to reconsider, but the parties do dispute why. The Skibbes maintain that the court denied reconsideration because U.S. Bank through Nevel alleged the same breach in all three foreclosures and thus violated the single refiling rule; whereas the Defendants maintain that the state court denied reconsideration on the incorrect factual basis that all three foreclosures were based on the same default date because no additional payments had been made. (*Id.* ¶ 45.)

The Defendants appealed, but they fared no better. (U.S. Bank and Nevel's Resps. to Skibbes' Facts ¶ 39.) On appeal, the appellate court denied Nevel's motion to supplement the record with proof of the additional payments, the court finding "that a reviewing court cannot review the contents of a record that were not a part of the trial court record and reviewed first by that court." *U.S. Bank Tr., N.A. v. Skibbe,* 2016 IL App (2d) 151143-U, ¶ 5 (Ill. App. Ct. Aug. 31, 2016). The appellate court continued:

> Turning to what transpired here, HFC filed a complaint to foreclose defendants' mortgage on December 23, 2010. In this complaint, HFC alleged that no payments were made on defendants' mortgage since April 2010. HFC subsequently voluntarily dismissed that complaint without prejudice on September 17, 2012. Thereafter, on June 5, 2013, which was well within one year after the initial complaint was voluntarily dismissed, HFC

- 7 -

filed a second complaint to foreclose defendants'
mortgage. In this complaint, HFC alleged that no
payments were made since August 2010. This second
complaint was voluntarily dismissed without prejudice
on November 27, 2013. On January 8, 2015, plaintiff
filed yet another complaint to foreclose defendants'
mortgage. In this complaint, like the June 5, 2013,
complaint, plaintiff alleged that no payments were
made since August 2010. Pursuant to section 13-217,
this third action to foreclose defendants' mortgage is
barred even though it was filed within the applicable
10-year statute of limitations (see 735 ILCS 5/13-206
(West 2014)). *Timberlake,* 175 Ill.2d at 163.

In reaching this conclusion, we find irrelevant the
fact that the 2010 complaint alleged that the default
date was in April 2010 and the 2013 and 2015
complaints alleged that the default date was in August
2010. At the hearing on plaintiff's motion to
reconsider, the court, with the parties' consent, made
clear that no payments were made since April 2010.
Accordingly, in contrast to what plaintiff alleges on
appeal, the 2010, 2013, and 2015 complaints all
involve the same transaction, i.e., defendants'
failure to make any payments on their mortgage since
April 2010.

*Id.* at ¶¶ 7-8. The Skibbes incurred approximately $18,000 in

legal fees and costs to defend Foreclosure III, which the

appellate court ruled improper in the above opinion. (U.S. Bank

and Nevel's Resps. to Skibbes' Facts ¶ 44.) The fallout is that

U.S. Bank is unable to foreclose on the property even though the

Skibbes agreed to surrender the property during bankruptcy and

are no longer making mortgage payments. (Skibbes' Resp. to U.S.

Bank ¶ 20.) Due to the Defendants' procedural blunder, the

Skibbes received a windfall; essentially, the Skibbes get to

keep their home despite not paying back the majority of their mortgage loan.

### F. Federal Court Litigation

On January 7, 2016, the Skibbes filed this lawsuit in federal court alleging that the Defendants' improper filing of Foreclosure III violated the Fair Debt Collection Practice Act, *see,* 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and the Illinois Consumer Fraud and Deceptive Business Practices Act, 810 ILCS 505/1 *et seq.* (the "ICPA"). A brief procedural history: U.S. Bank's Motion to Dismiss was denied. (*See,* Oral Ruling, ECF No. 21 (May 11, 2016).) Both Defendants answered the Complaint and asserted affirmative defenses; the Court struck Nevel's four affirmative defenses, but U.S. Bank's thirteen remain. (*See,* Oral Ruling, ECF No. 125 (Sept. 26, 2017).) U.S. Bank's counterclaims were dismissed primarily based on *res judicata*. (*See,* Memorandum Opinion and Order, ECF No. 87 (June 9, 2017).) The Court denied the Skibbes' Motion to Amend their Complaint after the Supreme Court's ruling in *Henson v. Santander,* 137 S.Ct. 1718, 1721 (2017). (Order, ECF No. 99 (June 27, 2017).) The Court now has before it cross-motions for summary judgment and rules as follows.

## II.  <u>STANDARD OF REVIEW</u>

### A.  Legal Standard for Summary Judgment

Summary judgment is appropriate when the admissible evidence reveals no genuine issue of any material fact. FED. R. CIV. P. 56(c). A fact is "material" if it is one identified by the law as affecting the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." The Court construes all facts and reasonable inferences in the light most favorable to the non-moving party. *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.,* 794 F.3d 871, 874 (7th Cir. 2015) (citing *Apex Digital, Inc. v. Sears, Roebuck, & Co.,* 735 F.3d 962, 965 (7th Cir. 2013)). On cross-motions for summary judgment, we draw inferences "in favor of the party against whom the motion under consideration was made." *Id.* (citing *McKinney v. Cadleway Props., Inc.,* 548 F.3d 496, 500 (7th Cir. 2008)).

### III.  <u>ANALYSIS</u>

#### A.  Violation of the Fair Debt Collections Practices Act ("FDCPA")

##### 1.  *FDCPA Claim Against U.S. Bank (Count I)*

U.S. Bank argues that it is not a "debt collector" under the FDCPA, pointing to the Supreme Court's recently decided

*Henson v. Santander,* 137 S.Ct. 1718, 1721 (2017). *Henson* resolved a Circuit split as to whether an entity that purchases a debt from another and then seeks to collect payment for itself is a "debt collector" under the FDCPA. *Id.* Answering the question in the negative, *Henson* held that "a debt purchaser . . . may indeed collect debts for its own account without triggering the statutory definition [of 'debt collector']." *Id.* at 1721-22.

The Skibbes make no legal argument against the import of *Henson.* Rather, they attempt to backpedal the facts alleged in this case, arguing that U.S. Bank is not the owner of the loan. Yet the Skibbes alleged to the contrary in their Complaint—and they cannot alter their earlier contention. *See,* Compl. ¶ 13; U.S. Bank Trust Ans. ¶ 13; *Help At Home Inc. v. Med. Capital, L.L.C.,* 260 F.3d 748, 753 (7th Cir. 2001) ("It is a 'well-settled rule that a party is bound by what it states in its pleadings.'" (quoting *Soo Line R.R. Co. v. St. Louis SW. Ry. Co.,* 125 F.3d 481, 483 (7th Cir. 1997))).

Furthermore, even if the Skibbes could work around their own pleadings, the record supports U.S. Bank's ownership, in other words, no reasonable jury could find that U.S. Bank does not own the loan at issue. The prior owner, HFC, assigned the loan and loan documents to "U.S. Bank Trust N.A., as Trustee for

LSF9 Master Participation Trust," the entity that is a party to this case, as reflected in the loan assignment documentation. (*See,* Assignment of Mortgage/Deed of Trust, Ex. D to Foreclosure Compl., Case No. 15 CH 22, filed Oct. 2, 2017; U.S. Bank Add'l Facts ¶ 1; U.S. Bank's Resp. to Skibbes' Facts ¶ 25; Skibbes' Resp. to U.S. Bank's Add'l Facts ¶ 2.) The Skibbes argue that the notice of transfer letter states that LSF9 Master Participation Trust-not U.S. Bank-owns the loan, which, though true, does not matter. (*See,* Notice of Sale of Ownership of Mortgage Loan, Ex. 32; U.S. Bank Add'l Facts ¶ 1.) It is clear from the Loan Assignment that U.S. Bank owns the loan as trustee and that these documents are, therefore, consistent.

One outstanding issue remains. There are two prongs to the definition of debt collector under the FDCPA. An entity is a debt collector if (1) the "principal purpose" of its business is the "collection of any debts," or (2) its business "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.A. § 1692a. *Henson* addressed the second prong, and, as discussed, removed U.S. Bank from the definition of "debt collector" under that prong. *See, Henson,* 137 S.Ct. at 1721. The Skibbes contend that U.S. Bank is still a "debt collector" under the primary-purpose prong, which was unaffected by *Henson*. However,

the Skibbes never alleged that the primary purpose of U.S. Bank's business was debt collection (the first prong) and their Motion to Amend the Complaint for that purpose was denied. Therefore, the Skibbes cannot move forward under the primary-purpose definition. Accordingly, U.S. Bank's Motion for Summary Judgment on the FDCPA claim is granted.

### 2. FDCPA Claim Against Nevel (Count II)

The only FDCPA claim remaining is against Nevel. Nevel admits that it is a debt collector under the FDCPA. However, Nevel argues that summary judgment in its favor is also appropriate because a violation of the Illinois Rules of Civil Procedure does not, on its own, give rise to a violation of the FDCPA and that is all the Skibbes have been able to prove here. On this point, the Court agrees.

The Fair Debt Collection Practices Act ("FDCPA") was "designed to deter wayward collection practices." *Henson,* 137 S.Ct. at 1720. It is not a mechanism to remedy violations of state pleading requirements. *St. John v. CACH,* No. 14 C 0733, 2014 WL 3377354, at *3 (N.D. Ill. July 8, 2014); *see also, Pantoja v. Portfolio Recovery Assoc.,* No 13 C 7654, 2015 WL 1396609, at *3-4 (N.D. Ill. Mar. 24, 2015). Nor is it an avenue to recover for violations of state laws. *See, Washington v. North Star Capital Acquisition,* No. 08 C 2823, 2008 WL 4280139,

at *2 (N.D. Ill. Sept. 15, 2008). In the same vein, the FDCPA is not "a vehicle to litigate claims arising under the Illinois rules of civil procedure" or "state-court procedural and evidentiary missteps." *Id.; Lena v. Cach, LLC,* No. 14 C 01805, 2015 WL 4692443, at *2 (N.D. Ill. Aug. 6, 2015).

In *Lena v. Cach,* the district court dismissed an FDCPA claim based on plaintiff's allegation that defendant brought a debt collection action when it knew it did not have the documentation necessary to prove its case at trial. *Lena,* 2015 WL 4692443, at *2. The court found that merely launching an unsuccessful state court suit was insufficient to establish a violation of the FDCPA. Similarly, in *Washington v. North Star Capital Acquisition, LLC,* the district court dismissed an FDCPA claim premised on a violation of an Illinois law that required certain documentation when filing a debt collection suit, reasoning that the FDCPA was "not meant to convert every violation of a state debt collection law into a federal violation." *Washington,* 2008 WL 4280139, at *2.

This is not to say that certain conduct in state court litigation cannot lead to a violation of FDCPA. *See, Lena,* 2015 WL 4692443, at *5. However, cases that result in liability under the FDCPA based on state court litigation are distinguishable from the case before us. In those cases, the

state court filings contained false statements or misrepresentations. *See, Rosales v. Weltman, Weinberg & Reis Co.,* No. 15 CV 06943, 2017 WL 1436957, at *3 (N.D. Ill. Apr. 24, 2017) (denying motion to dismiss FDCPA claim based on misrepresentations in a state court complaint); *Butler v. J.R.S-I, Inc.,* No. 15 C 6059, 2016 WL 1298780, at *8 (N.D. Ill. Apr. 4, 2016) (same); *Matmanivong v. Unifund CCR Partners,* No. 08 CV 6415, 2009 WL 1181529, at *3 (N.D. Ill. Apr. 28, 2009) (same). Here, the state court filings contain factually accurate statements. There is no factual misrepresentation outside of the alleged misrepresentation of filing and pursuing litigation barred by the Illinois single-refiling rule. The parties heavily dispute the factual basis of the state court rulings, but that need not be decided here. What is true for the purposes of this motion based on the state court rulings is this: Foreclosure III was barred by Illinois' single-filing rule. However, "the fact that a lawsuit turns out ultimately to be unsuccessful" is not itself sufficient to constitute an "action that cannot legally be taken." *Heintz v. Jenkins,* 514 U.S. 291, 295-96 (1995) (quoting 15 U.S.C. § 1692e(5)). When the facts based on violating Illinois' single-refiling rule (and the litigation that followed) are removed from the case, the Skibbes are left with no other evidence of an FDCPA violation.

Thus, the Court grants summary judgment to Nevel on the basis that a violation of the Illinois procedural rules is not the same as a violation of the FDCPA.

The Skibbes claim that the filing of Foreclosure III was more than a procedural misstep.  They claim that by filing suit, Nevel essentially misrepresented that it could properly bring the foreclosure when it could not, citing *Kabir v. Freedman Anselmo Lindberg LLC,* No. 14 C 1131, 2015 WL 4730053, at *5 (N.D. Ill. Aug. 10, 2015).  However, *Kabir* does not save the Skibbes because the court came to the opposite conclusion. There, the Court denied defendant's motion to dismiss after finding the plaintiff's complaint did *not* merely complain "about whether [the defendant] followed Illinois procedural rules or violated the Illinois Mortgage Foreclosure Law . . ." *Id.*  Here, however, the Court finds that the crux of the undisputed facts shows that the Skibbes' claimed violation is just that.

Past *Kabir,* the Skibbes rely on the general rule that a defendant violates the FDCPA by attempting to collect a debt that is barred by the statute of limitations.  *See, Parkis v. Arrow Fin. Servs.,* No. 07 C 410, 2008 WL 94798, at *7 (N.D. Ill. Jan. 8, 2008) (claim for filing state court complaint attempting to collect time-barred debt is viable under FDCPA).  However, the Court does not find *Parkis* as analogous as the cases

previously discussed above. A statute of limitations bar has significant public policy underpinnings, the protection of which fall within the type of unfair practices the FDCPA forbids. *See, Phillips v. Asset Acceptance, LLC,* 736 F.3d 1076, 1079 (7th Cir. 2013) (citing *Kimber v. Federal Financial Corp.,* 668 F. Supp. 1480, 1487 (M.D. Ala. 1987)) (discussing the public policy behind "outlawing stale suits to collect consumer debts"). This public policy is not at play where state court procedural rules are involved, as here. The state court is well able to enforce its procedural rules and does not need the assistance of the federal courts.

Taking a different tact, the Skibbes argue that this Court's earlier ruling denying Defendants' Motion to Dismiss already decided these issues. However, the Court's earlier ruling found only that the pleadings were sufficient, not that the Skibbes would prevail. At the motion-to-dismiss stage, the Court assessed the adequacy of the pleadings taking all factual inferences in the Skibbes' favor. (*See,* Oral Ruling, 5:11-14 (May 11, 2016).) This ruling did not evaluate the alleged misrepresentations in the state court proceeding, nor whether the filing and subsequent prosecution of Foreclosure III was, in fact, false, deceptive, or misleading. *Id.* It merely determined that the Skibbes stated a claim that may have established

liability under the FDCPA. *See, e.g., Rosales,* 2017 WL 1436957, at *3. Now with the benefit of a full record, it is apparent that the state court proceedings here did not contain factual misrepresentations like in *Rosales;* rather, the evidence established that Foreclosure III was barred by a state procedural rule — the Skibbes maintain this is enough.

The Court disagrees. Disputes over the application of state procedural rules should be resolved in its proper forum—the state court. This Circuit has made clear that it will not "transform the FDCPA into an enforcement mechanism for matters governed by state law." *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.,* 794 F.3d 871, 876 (7th Cir. 2015) (rejecting claim that filing a summary judgment motion containing inaccuracies in state court violated the FDCPA). Yet, the Skibbes entire argument is that the Defendants' loss in state court constitutes an FDCPA violation. The entire point of the Seventh Circuit's admonition is to prevent every state court debt collection or foreclosure loss from becoming a federal claim. *See, id.*

Furthermore, a litigant should not fear bringing contested issues before a tribunal because a loss in state court will create a claim under the FDCPA. This would be a different case if, after Foreclosure III's final judgment, the Defendants filed Foreclosure IV. In that case, the Defendants may very well have

violated the FDCPA if they brazenly ignored a final judgment from the state court. Yet those are not the facts before the Court. Rather, the Skibbes would have this Court find an FDCPA violation merely for bringing a foreclosure suit that was later ruled to be improper based on the Illinois Rules of Civil Procedure. The Court questions the wisdom of attaching FDCPA liability to defendants who bring an unsuccessful suit, finding the Eighth Circuit's reasoning in *Hemmingsen v. Messerli & Kramer, P.A.* persuasive. In *Hemmingsen,* the Eighth Circuit rejected an FDCPA claim based on alleged misrepresentations within a summary judgment motion in state court. In dismissing the FDCPA claim, the Court reasoned:

> The rule [plaintiff] urges – that a debt collector's fact allegations are false and misleading for purposes of § 1692e when . . . not adequately supported in the collection suit – would be contrary to the FDCPA's "apparent objective of preserving creditors' judicial remedies," *Heintz,* 514 U.S. at 296, an objective consistent with the principle "that the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 741 (1983). If judicial proceedings are to accurately resolve factual disputes, a lawyer "must be permitted to call witnesses without fear of being sued if the witness is disbelieved and it is alleged that the lawyer knew or should have known that the witness' testimony was false." *Imbler v. Pachtman,* 424 U.S. 409, 439 (1976) (White, J., concurring). Judges have ample power to award attorney's fees to a party injured by a lawyer's fraudulent or vexatious litigation tactics. *See, e.g., Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); 28 USC. § 1927.

There is no need for follow-on § 1692e litigation that
increases the cost of resolving bona fide debtor-
creditor disputes.

*Hemmingson,* 674 F.3d 814, 819-20 (8th Cir. 2012). Certainly an
FDCPA claim could arise from state court litigation, but merely
violating a procedural rule (as here) is insufficient.

Based on all the undisputed facts before this Court on
summary judgment, the Court finds that the filing and
prosecuting of the procedurally-barred Foreclosure III does not
give rise to an FDCPA violation. "Because state-court
procedural and evidentiary missteps are not 'false, deceptive,
or misleading representations or means that are actionable under
[15 U.S.C.] § 1692e [of] [*sic*] the FDCPA," this Court grants
summary judgment to Nevel. *Lena,* 2015 WL 4692443, at *2.

## B. Violation of Illinois Consumer Fraud and Deceptive Business Practices Act Against U.S. Bank (Count III)

The Skibbes also argue that U.S. Bank violated the ICFA by
filing Foreclosure III when it was unlawful. U.S. Bank
vehemently argues that merely losing a foreclosure action does
not constitute a violation of ICFA. As stated above, the Court
takes as true the fact that Foreclosure III was procedurally
barred. However, the question for this Court's consideration is
not whether the filing was procedurally proper, but whether the
litigation privilege applies.

"The majority approach in [the Northern District of Illinois] has been to view ICFA claims as barred by the litigation privilege when a debt collector files a lawsuit." *Rosales v. Weltman, Weinberg & Reis Co.,* No. 15 CV 06943, 2017 WL 1436957, at *5 (N.D. Ill. Apr. 24, 2017) (collecting cases). In *Rosales,* the plaintiff was sued in state court for defaulting on a personal loan. *Id.* at *1. The state court complaint named the wrong bank as the creditor. *Id.* The plaintiff then filed a claim in federal court against the defendant for violating the ICFA, claiming that the defendant had falsely represented that it could sue the plaintiff when it legally could not. *Id.* The Court dismissed the ICFA claim, following the majority rule. Similarly, in *Rehman v. Pierce & Assocs., P.C.,* the Court dismissed an ICFA claim based on the litigation privilege where the defendant failed to allow plaintiffs the grace period imposed by state law before filing for foreclosure. *Rehman,* No. 16 C 5178, 2017 WL 131560, at *3 (N.D. Ill. Jan. 13, 2017); *see also, Whittler v. Midland Funding, LLC,* No. 14 C 9423, 2015 WL 3407324, at *3 (N.D. Ill. May 27, 2015) (finding no unfair or deceptive practice in violation of ICFA, but noting that the litigation privilege would bar an ICFA claim regardless). Both cases illustrate a mistake in state court litigation at least as egregious as the one before this Court. *Rosales* involved a

factual misrepresentation in the pleadings and *Rehman* involved a violation of Illinois law. *See, id.* Yet, in both cases, the litigation privilege applied. This Court thus follows the majority approach and finds that the litigation privilege applies to bar the Skibbes' ICFA claim. *See, Rosales,* 2017 WL 1436957 at *5; *Rehman,* 2017 WL 131560, at *3; *Whittler,* 2015 WL 3407324 at *3.

Although the Skibbes attempt to distinguish the cases cited by U.S. Bank, they do not point to any case law with analogous facts that support a claim under the ICFA. Certainly, "debt collectors may violate the ICFA if they fabricate the debt or lie about their right to collect on a debt." *Maldanado v. Freedman Anselmo Lindberg, LLC,* No. 14 C 10176, 2015 WL 2330213, at *4 (N.D. Ill. May 14, 2015). Here, there is no dispute that the mortgage was valid and owed by the Skibbes and that the factual statements in the pleadings were accurate. The Skibbes cite *Maldonado,* but *Maldonado* held that bringing a debt collection action in a more distant venue, *although improper,* was "not the kind of deceptive conduct that the ICFA contemplates." *Maldanado,* 2015 WL 2330213 at *4. Here, the state court found Foreclosure III was improper, but that alone is insufficient to avoid the litigation privilege.

The Skibbes also cite to *Grant-Hall v. Cavalry Portfolio Servs., LLC,* 856 F. Supp.2d 929, 942 (N.D. Ill. 2012), which held that the plaintiff stated a claim under ICFA when defendant filed a state action in violation of a state law requiring certain documentation of assignment.  The complaint alleged that the defendant "misrepresented to consumers and courts that it had the right to file suit," which was sufficient to plead under the ICFA. *Id.* at 942 (alteration marks omitted).  First, at summary judgment, the inquiry is different.  And second, *Grant-Hall* involved a debt collection action where the creditor never had the legal documentation necessary to bring the suit, a scenario not present here.

The Skibbes analogize this case to *Phillips v. Asset Acceptance, LLC,* 736 F.3d 1076, 1079 (7th Cir. 2013), where the Seventh Circuit upheld a class action asserting violations of the FDCPA based on litigation filed after the statute of limitations had passed.  In comparing the facts of *Phillips* to *Rosales* and *Rehman,* this Court finds *Rosales* and *Rehman* more analogous.  As discussed above, the public policy considerations underpinning a statute of limitations bar are not present where a state procedural rule is at issue.  This would be a different case if the statute of limitations had run.

Finally, the Skibbes rely on their earlier victory where this Court denied U.S. Bank's motion to dismiss. However, denial of a motion to dismiss does not ensure victory at summary judgment. U.S. Bank did not raise the litigation privilege in its motion to dismiss. Now that it is before the Court, this Court finds that the litigation privilege applies as a matter of law and bars the Skibbes' claim under the ICFA.

## IV.   CONCLUSION

For the reasons stated herein, U.S. Bank and Nevel's Motions for Summary Judgment [ECF Nos. 126, 131] are granted. The Skibbes' Motion for Partial Summary Judgment [ECF No. 142] is denied.

**IT IS SO ORDERED.**

_____
                    Harry D. Leinenweber, Judge
                    United States District Court

Dated:  2/15/18